CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 04 2016

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | Criminal Action No. 7:15CR00061 |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MARK DURAN KINSER, | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | Chief United States District Judge |
| | ) | |

On December 10, 2015, a grand jury charged defendant Mark Duran Kinser in an eight-count superseding indictment for wire fraud (Counts I, VI, and VII), mail fraud (Count II), theft of pension funds (Count III), making a false statement to the federal government (Counts IV and V), and money laundering (Count VIII), arising out of his alleged theft of $491,000.00 from his company's retirement plan. This case is presently before the court on Kinser's motion to disqualify United States Attorney John P. Fishwick, Jr. and the United States Attorney's Office for the Western District of Virginia. For the reasons set forth below, the motion will be denied.

## Background

Mark Duran Kinser is the CEO, owner, manager, and partial owner of a number of different corporate entities. In addition, he was a defendant in a previous civil matter before this court. See Three Rivers Landing of Gulfport, LP v. Three Rivers Landing, LLC, No. 7:11-CV-25 (W.D. Va.). In that case, Kinser was sued for, inter alia, conversion of plaintiffs' funds in the amount of $2.7 million. Kinser also participated in a deposition as part of that litigation. After a bench trial on October 8, 2013, the Honorable James C. Turk, United States District Judge, found Kinser and his co-defendants jointly and severally liable for conversion and awarded damages to plaintiffs in the amount of $3,044,147.00. According to Kinser, he believes that the government

is attempting to use his deposition testimony in order to convict him in the instant case. Specifically, he contends that his deposition testimony gives rise to all eight counts in his superseding indictment.

Early in the Three Rivers litigation, Kinser met with U.S. Attorney John P. Fishwick, Jr. on more than one occasion, while Fishwick was in private practice. Billing records from Kinser's counsel in that case indicate that Fishwick met with Kinser and his counsel in February of 2011, August of 2012, and September of 2012. At the time of these meetings, Kinser was seeking additional defense counsel. Kinser believes that the consultations were detailed and included specific discussions about his companies' finances and operations, including matters at issue in the instant case, as well as non-public information.

In September of 2015, in anticipation of his appointment as U.S. Attorney, Fishwick provided information as to his clients for the years of 2013 through 2015 to the Executive Office for United States Attorneys, as part of a conflict and ethics review. Because his consultations with Kinser occurred in 2011 and 2012, and Fishwick declined to represent Kinser in Three Rivers, Fishwick did not disclose the communications as part of the conflict review process. AUSA Jennifer Bockhorst, the Ethics Advisor and Professional Responsibility Officer for the U.S. Attorney's Office, then performed a preliminary review for potential conflicts. On December 21, 2015, Fishwick was appointed U.S. Attorney for the Western District of Virginia. The next day, Fishwick participated in a conflict review meeting and was told not to discuss any identified cases with employees at the U.S. Attorney's Office. On January 12, 2016, Bockhorst completed the conflicts review process and made all recusal determinations.

On December 10, 2015, a grand jury charged defendant Mark Duran Kinser in an eight-count superseding indictment. Thereafter, on January 20, 2016, Kinser met with counsel and

disclosed his previous consultations with Fishwick. That same day, defense counsel advised AUSA Jennie Waering of the potential conflict. Waering then consulted with Bockhorst. On January 25, 2016, Bockhorst informed defense counsel that Fishwick had been screened from the instant case, pending a review of the conflict by the Deputy Attorney General. Two days later, Deputy Attorney General David Margolis approved Fishwick's recusal. As a result, Former Acting U.S. Attorney Tony Giorno was appointed to act as the supervising attorney in the instant case.

On January 29, 2016, Kinser filed a motion seeking disqualification of Fishwick and the entire U.S. Attorney's Office based on Fishwick's consultations with Kinser regarding <u>Three Rivers</u>.[1] The court held a hearing on the motion on March 1, 2016. The matter has been fully briefed and is ripe for disposition.

## Discussion

The United States District Court for the Western District of Virginia has adopted the Virginia Rules of Professional Conduct to govern the conduct of attorneys appearing before it. <u>See</u> W.D. Va. Rule of Disciplinary Enforcement IV(B) ("The Code of Professional Responsibility adopted by the Virginia Supreme Court, as amended from time to time by that court and to the extent not in conflict with federal law, shall be the disciplinary rules of this Court ...."). In his motion, Kinser argues that the entire U.S. Attorney's Office should be disqualified from the instant case because its attorneys are subject to the same conflict rules that govern the conduct of private practice attorneys, and Fishwick's conflict may be imputed to the entire office. The court is constrained to disagree.

---

[1]     The court notes that Fishwick formally recused himself from the case on January 27, 2016. Therefore, the court will not determine whether Fishwick should be disqualified, as that point is now deemed moot.

Kinser argues, as an initial matter, that the Citizens Protection Act of 1998 ("CPA"), 28

U.S.C. § 530B, forbids the application of Rule 1.11 of the Virginia Rules of Professional

Conduct to U.S. Attorneys and their office. Section 530B provides that, "[a]n Attorney for the

Government shall be subject to State laws and rules, and local Federal court rules ... to the same

extent and in the same manner as other attorneys in that State." 28 U.S.C. § 530B. Pursuant to

this statute, the Department of Justice ("DOJ") promulgated that its attorneys must "comply with

state and local federal rules of professional responsibility[.]" 28 C.F.R. § 77.1(b). Moreover, the

DOJ noted that § 530B "should not be construed to ... alter rules of professional responsibility

that expressly exempt government attorneys from their application." Id. § 77.1(c). Although

there is little caselaw as to the proper interpretation of § 530B, district courts generally read this

statute to simply require that U.S. Attorneys be subject to the state's rules of professional

conduct in general. See United States v. Whittaker, 268 F.3d 185, 190 (3d Cir. 2001) (noting that

the "Pennsylvania Rules of Professional Conduct were applicable by reason of 28 U.S.C. §

530B"); United States v. Reid, No. 6:07-110-DCR, 2008 WL 4073337, at *2 (E.D. Ky. Aug. 28,

2008) ("Federal prosecutors are subject to state ethics guidelines to the same extent and manner

as other attorneys in that state. 28 U.S.C. § 530B(a). Therefore, federal prosecutors in the Eastern

District of Kentucky are subject to the Kentucky Rules of Professional Conduct, which, among

other things, govern conflicts of interest."); United States v. Huff, No. 3:00CR-123-H, 2002 WL

1856910, at *1 (W.D. Ky. Aug. 13, 2002) (finding that the CPA "applies state court rules to

federal government attorneys" and, thus, interpreted Kentucky's Rule 1.11 for conflicts

concerning government attorneys who were previously in private practice). Kinser has not

provided any legal authority for his argument that § 530B may be interpreted to prevent Virginia

Rule 1.11 from applying to U.S. Attorneys. In fact, there is extensive caselaw in which courts

have applied their forum state's version of Rule 1.11 to attorneys in the U.S. Attorney's Office. See, e.g., United States v. Smith, 995 F.2d 662, 675-76 (7th Cir. 1993) (finding that a former AUSA was disqualified as counsel for defendant under Illinois Rule 1.11 due to his prior involvement in federal government investigation); Kronberg v. LaRouche, No. 1:09CV947, 2010 WL 1443934, at *5 (E.D. Va. Apr. 9, 2010) (finding that, under Virginia Rule 1.11, the plaintiff who testified in federal criminal prosecution of defendant could not be represented by a former AUSA who participated in the prosecution). As such, the court concludes that, based on its interpretation of § 530B, it must determine whether disqualification of the entire U.S. Attorney's Office is necessary under Rule 1.11, which expressly applies to government attorneys who were previously in private practice.

Virginia Rule 1.11 provides that a government attorney may not "participate in a matter in which the lawyer participated personally and substantially while in private practice" without the private client's consent. Va. R. Prof'l Conduct 1.11(d)(1). However, "[p]aragraph (d) does not disqualify other lawyers in the disqualified lawyer's agency." Id. at 1.11(e). Such distinction is necessary because "if the disqualification of one government attorney could serve as the predicate for the disqualification of the entire United States Attorney's Office, the administration of justice would be irreparably damaged." Grand Jury Subpoena of Ford v. United States, 756 F.2d 249, 254 (2d Cir. 1985). Therefore, "[w]hile a private attorney's conflict of interest may require disqualification of that attorney's law firm in certain cases, such an approach is not favored when it comes to the office of a United States Attorney." United States v. Hasarafally, 529 F.3d 125, 128 (2d Cir. 2008); see also United States v. Farrell, 115 F. Supp. 3d 746, 764-65 (S.D. W. Va. 2015) ("[T]he trend among federal courts has been to limit vicarious disqualification to firms, absent attorney-specific findings that the entire U.S. Attorney's office

5

was disqualified, whereas all of the prosecutors participating in this case are conflict-free."). "An entire U.S. Attorney's Office should only be disqualified, if ever, when special circumstances demonstrate that the interest of justice could only be advanced by this drastic remedy." United States v. Basciano, 763 F.Supp.2d 303, 312 (E.D.N.Y.2011).

In the instant case, the court finds that Kinser has not shown special circumstances that would warrant disqualification of the entire U.S. Attorney's Office. The comments to Rule 1.11 provide that, "the rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government." Va. R. Prof'l Conduct 1.11 cmt. 4. As such, "[t]he provisions for screening and waiver are necessary to prevent the disqualification rule from imposing too severe a deterrent against entering public service." Id. Although there is little guidance as to proper screening procedures, Virginia Rule 1.18 provides that, "the disqualified lawyer is timely screened from participation in the matter and reasonably believes that the screen would be effective to sufficiently protect information that could be significantly harmful to the prospective client." Id. at 1.18(d)(2)(i).

Here, the government has asserted that Fishwick was screened from the case as soon as the potential conflict was revealed to the U.S. Attorney's Office. Specifically, Fishwick and the attorneys in the instant case were directed not to discuss the pending matter or Three Rivers. Moreover, the government has asserted that the files for this case are segregated in a conference room, in order to prevent Fishwick from accessing such files, and these materials are clearly marked to reflect Fishwick's recusal. Finally, the attorneys in this case will be working under the supervision of Giorno, and Fishwick's supervisory responsibilities over the attorneys in the instant case have been reassigned until the case's conclusion. The court notes that similar

6

measures have been deemed sufficient in previous cases in the Fourth Circuit. See United States v. Hayes, 104 F.3d 360, at *1 (4th Cir. 1996) (unpublished opinion) (upholding the district court's decision denying defendant's motion to disqualify the U.S. Attorney's Office because the government had "presented evidence that the United States Attorney's Office followed proper internal procedures and that the only relationship between [disqualified AUSA] and the prosecutor was the fact that they worked for the same office"); see also In re Grand Jury, 790 F. Supp. 109, (E.D. Va. 1992) (finding that it was not necessary to disqualify the entire U.S. Attorney's Office for the Eastern District of Virginia because the conflicted U.S. Attorney recused himself, no communications concerning the case have occurred, and the Assistant U.S. Attorney was appointed to supervise the investigation). Moreover, Waering, Bockhorst, and AUSA Ashley Neese have all filed sworn affidavits, indicating that Fishwick was not involved in the case and they had no discussions with Fishwick as to his prior consultations with Kinser. Therefore, the court finds that Virginia Rule 1.11 does not require disqualification of the entire U.S. Attorney's Office in this case.

Even if the court could construe the CPA to require that federal government attorneys be subject to the discrete rules of professional conduct as private attorneys, the court believes that the result would be unchanged. Although Kinser argues that he established an attorney-client relationship with Fishwick, the court finds that he was instead a prospective client, as Fishwick declined to represent Kinser in Three Rivers. As such, Rule 1.18 of the Virginia Rules of Professional Conduct would apply. That rule provides that, "a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation[.]" Va. R. Prof'l Conduct 1.18(b). Moreover, "[a] lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a

7

substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter." Id. at 1.18(c). This disqualification is imputed on the attorney's law firm. Id. However, disqualification of the entire law firm is not automatic as representation is permissible if the prospective client has given informed consent, or the disqualified lawyer is timely screened and notice is promptly given to the prospective client. Id. at 1.18(d). Again, the court finds that Fishwick was timely screened from the instant matter, notice was provided to Kinser regarding Fishwick's recusal, and the measures taken by the U.S. Attorney's Office were reasonable to avoid exposing disqualifying information.[2] Therefore, the court concludes that, even if the specific rules for private practice attorneys did apply to federal government attorneys, disqualification of the entire U.S. Attorney's Office is not warranted in the instant case. Accordingly, Kinser's motion will be denied.

## Conclusion

For the foregoing reasons, the defendant's motion for disqualification will be denied. The Clerk is directed to send certified copies of the memorandum opinion to all counsel of record.

DATED: This 4th day of March, 2016.

_____
Chief United States District Judge

---

[2]     The court's conclusion is based on the government's representation that its case-in-chief will not disclose any confidential information discussed by Fishwick and Kinser regarding Three Rivers. The court believes that such understanding will also prevent exposure of disqualifying information pursuant to Rule 1.18.